**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)          *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARILLE HEALLIS, | : | Civil Action No. |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| THE TRUSTEES OF THE | : | |
| UNIVERSITY OF PENNSYLVANIA, | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Marille Heallis (hereinafter "Plaintiff"), by and through her attorney, Koller Law,

LLC, bring this civil matter against The Trustees of The University of Pennsylvania (hereinafter

"Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),

the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human

Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support

thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Defendant The Trustees of the University of Pennsylvania is

  a university with a location and corporate headquarters at 3451 Walnut Street, Philadelphia,

PA 19104.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADA, PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on November 25, 2024, alleging race and disability discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-01549 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated February 12, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is African American.

21. In or around November 2023, Defendant hired Plaintiff in the position of Assistant Director of Finance and Administration.

22. Plaintiff was well qualified for her position and performed well.

### DEFENDANT GAVE PLAINTIFF A LOWER POSITION TITLE COMPARED WITH HER NON-AFRICAN AMERICAN COMPARATORS

23. Prior, this role was held by a Hispanic employee and was titled "Associate Director of Finance and Administration."

24. Plaintiff completed the same job tasks as the prior employee who held the role.

25. Additionally, there were approximately four (4) other employees at Defendant who had an equivalent director role as Plaintiff.

26. All of their titles are Associate Director.

27. Plaintiff was the only person in leadership in her office that was African American and was the only employee called an Assistant Director.

### COWORKERS INFORMED PLAINTIFF THAT AFRICAN AMERICAN FEMALE EMPLOYEES HAD A VERY HIGH TURNOVER RATE UNDER HER DIRECT SUPERVISOR

28. Several African American employees at Defendant informed Plaintiff that African American female employees had a very high turnover rate over the course of Maureen O'Leary's (Caucasian), Associate Vice Provost for Research, Environmental Health, and Radiation Safety and Plaintiff's direct supervisor, four (4) year tenure with Defendant.

29. Every African American female employee had either transferred out of the department or quit.

## O'LEARY INFORMED PLAINTIFF THAT SHE CREATED A JOB POSTING FOR A POSITION SUBORDINATE TO PLAINTIFF, SO THAT SHE COULD HAVE COMPLETE CONTROL OVER THE HIRING PROCESS

30. Further, the day she was hired, O'Leary notified Plaintiff that she had made a job posting just prior to Plaintiff starting for a new position O'Leary had just created.

31. Plaintiff soon found out that O'Leary made this post before Plaintiff started so that O'Leary could have complete control over the hiring process for this new role, even though the new role was intended to be a subordinate position to Plaintiff and would report to Plaintiff.

32. O'Leary did this specifically because she wanted to hire Patricia Vercio (Caucasian) into the role.

## PLAINTIFF LEARNED THAT SHE WAS SELECTED FOR HER POSITION BECAUSE UPPER MANAGEMENT TOLD O'LEARY THAT SHE NEEDED TO DIVERSIFY THE LEADERSHIP TEAM

33. Vercio had applied for Plaintiff's position, but Plaintiff ultimately got the role because, upon information and belief, Defendant's upper management told O'Leary that she needed to diversify the leadership on her team.

34. Every single other director of O'Leary's team was Caucasian.

## PLAINTIFF UNSUCCESSFULLY ATTEMPTED TO CONTRACT VERCIO WITHOUT CONSULTING PLAINTIFF

35. Ultimately, O'Leary proposed a contract to Vercio, without consulting Plaintiff, in which Vercio would have the same pay rate as Plaintiff, despite being Plaintiff's subordinate.

36. Vercio ended up declining the offer and did not work at Defendant.

**O'LEARY THEN UNSUCCESSFULLY ATTEMPTED TO FILL THE POSITION WITH ANOTHER CAUCASIAN CANDIDATE**

37. Still, just a few months later, O'Leary unsuccessfully tried to fill this role with another Caucasian prospective candidate.

**O'LEARY PLACED PLAINTIFF IN A CUBICLE IN THE BASEMENT, WHILE HER CAUCASIAN COMPARATORS RECEIVED THEIR OWN OFFICES**

38. Upon starting at Defendant, O'Leary immediately placed Plaintiff in a cubical work space in the basement of Defendant.

39. Plaintiff was the only director with a cubical.

40. All of the other Caucasian directors had offices of their own.

**PLAINTIFF HAD TO FIND PRIVATE SPACE ELSEWHERE AT DEFENDANT AND COMPLAINED TO O'LEARY ABOUT IT, BUT IT WAS NOT ADDRESSED**

41. Specifically, Plaintiff handled confidential information as part of her job duties.

42. This forced Plaintiff to have to find private space elsewhere to take all of her calls and meetings.

43. Plaintiff complained to O'Leary about this, but O'Leary brushed off the complaints.

**PLAINTIFF COMPLAINED TO HUMAN RESOURCES ABOUT O'LEARY'S DISCRIMINATORY CONDUCT AND RECEIVED OFFICE SPACE MONTHS LATER**

44. In or around December 2023, Plaintiff filed a complaint with Ufuoma Pela, Lead Human Resources, about O'Leary's discriminatory conduct.

45. Over three (3) months after her start, Pela finally forced O'Leary to provide Plaintiff office space.

6

## PLAINTIFF WAS FORCED TO TAKE THREE (3) SHORT MEDICAL LEAVE DUE TO HER DISABILITY

46. From November 2023 through January 2024, Plaintiff was forced to take three (3) short medical leaves of absence, each a few days long, for her Asthma or complications related to her breathing.

47. Asthma is a serious health condition that is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

48. The major life activities affected by Asthma, include, but are not limited to, breathing.

## PLAINTIFF REQUESTED THE REASONABLE ACCOMMODATION TO BE ABLE TO WORK REMOTELY DUE TO HER DISABILITY

49. As a result of this, in or around late January 2024, Plaintiff requested the reasonable medical accommodation to work from home once per week through the Office of Affirmative Action.

50. Plaintiff requested this as an option in case she suffered from severe breathing issues and could not come into work at any point during the week.

51. At this point, Plaintiff was still working in a cubical in the basement, which had no air ventilation or windows.

52. Importantly, all other Caucasian directors already worked from home whenever they wanted.

53. Plaintiff's team was the only team forced to come in person every day, by O'Leary's orders.

7

54. Further, at first, Plaintiff did not want to complain about her inability to work from home, because O'Leary made derogatory comments to Plaintiff about Marta Guron, regarding when Guron had made a prior disability accommodation request.

## PLAINTIFF COMPLAINED TO PELA ABOUT DISABILITY AND RACE DISCRIMINATION

55. Eventually, Plaintiff complained to Pela about disability and race discrimination in connection with her work from home accommodation request.

56. Importantly, Plaintiff had been having an ongoing conversation with Pela about O'Leary's discriminatory conduct since December 2023.

## PLAINTIFF COMPLAINED TO THE OFFICE OF AFFIRMATIVE ACTION REGARDING HER ACCOMMODATION REQUEST WHICH DEFENDANT EVENTUALLY APPROVED

57. Plaintiff finally met with Jennifer Rappaport, Office of Affirmative Action, about her accommodation request on April 29, 2024.

58. It took Defendant three (3) months to grant Plaintiff's accommodation request.

59. No other directors had to go through this process in order to work from home.

60. Finally, in May 2024, Rappaport notified Plaintiff that her request could be approved, but O'Leary only wanted to approve it for a two (2) month period.

61. Plaintiff's Asthma condition was an ongoing disability that would not get better over time.

## O'LEARY INSISTED A CAUCASIAN EMPLOYEE BE HIRED AND REPORT TO PLAINTIFF DESPITE THE PROCESS NOT FOLLOWING DEFENDANT'S POLICIES

62. Around the same time, Plaintiff discovered that O'Leary had insisted Amanda Barber (Caucasian) to be hired, to directly report to Plaintiff.

63. Prior, Barber worked for Defendant's Wharton School of Business.

8

64. Upon information and belief, Barber was still in her probationary period and no-transfer six (6) month period per Defendant's policies, but O'Leary got an exception to bring Barber onto her team.

## O'LEARY DRAFTED BARBER'S JOB DESCRIPTION TO COVER THE SAME JOB DUTIES AS PLAINTIFF

65. When this happened, O'Leary wrote Barber's job description such that she would be doing some of the same duties as Plaintiff, despite being Plaintiff's subordinate.

66. At the time, several employees at Defendant expressed concern to Plaintiff that O'Leary was trying to groom Barber to take over Plaintiff's position.

## O'LEARY BEGAN TO BEHAVE IN A HOSTILE MANNER TOWARDS PLAINTIFF AND ASSIGNED PLAINTIFF THE LOWEST MERIT RAISE OF ALL THE EMPLOYEES IN HER OFFICE

67. In or around May 2024, O'Leary began to act hostile and standoffish to Plaintiff as a result of her discrimination complaints against O'Leary.

68. O'Leary assigned merit raises to all the employees in her office.

69. The average merit raise was typically 3.5%, and merit raises were based on a lump sum to be given out, so if one employee got a higher raise, another employee would have to get less.

70. As part of Plaintiff's job duties, she compiled the list of the raises.

71. However, instead of sending the list to Plaintiff, O'Leary sent it directly to the provost office, who then sent it back to Plaintiff.

72. When they sent it back, the provost office warned Plaintiff that she would see her raise was unreasonably low.

73. Upon looking at the numbers, per her job duties, Plaintiff received the lowest raise out of anyone (2%).

74. Everyone else had received between a 3.2%-4.4%, aside from one employee who had just been promoted.

75. Importantly, Barber was awarded the highest raise at 4.4%, despite just starting in the department, essentially taking a higher percent raise from Plaintiff.

## PLAINTIFF COMPLAINED TO PELA REGARDING HER RAISE AND IT WAS SUBSEQUENTLY INCREASED

76. Plaintiff filed a complaint with Pela about her raise.

77. Plaintiff had not received any disciplines or write ups about her performance prior, so this was unwarranted.

78. Pela said he would fix the raise amount.

79. As a result, in June 2024, Pela changed O'Leary's low raise amount to the baseline amount raise for Plaintiff.

## PLAINTIFF FILED ANOTHER COMPLAINT OF RACE DISCRIMINATION TO PELA

80. Around the same time, in or around May 2024, Plaintiff filed another complaint of race discrimination with Pela.

## PELA OFFERED TO TRANSFER PLAINTIFF TO THE PROVOST OFFICE

81. Two (2) weeks later, Pela responded to Plaintiff that Defendant was undergoing a restructuring and Plaintiff could be moved from the Environmental Safety Office to the Provost Office (which Plaintiff's role was already considered a part of).

82. Pela said the finance element of Plaintiff's job would move with her to the new office.

## BARBER CONTINUED TO PERFORM SOME OF PLAINTIFF'S FINANCE DUTIES

83. However, Barber continued to do some of Plaintiff's finance duties in the old office.

84. This caused Plaintiff issues with being able to perform her own tasks upon her transfer.

## PLAINTIFF'S NEW SUPERVISOR INFORMED HER THAT SHE WOULD PROVIDE HER WITH PROFESSIONAL DEVELOPMENT

85. Amy Collins (Caucasian), became Plaintiff's new supervisor in the new office.

86. At the same time, Shakia Williams (African American), Financial Administrative Coordinator, moved to the Provost Office with Plaintiff.

87. Collins assured Plaintiff and Williams that she was on their side, would set up goals with them, and would provide them with professional development in the new office.

## DEFENDANT TERMINATED PLAINTIFF

88. Despite this, on or around September 3, 2024, Collins and Pela called Plaintiff into a meeting.

89. Collins and Pela notified Plaintiff that her position would be eliminated as of October 4, 2024.

90. The alleged reason for this was "redundancy" in positions and tasks at Defendant.

91. At this time, Pela took all of Plaintiff's work belongings.

92. Plaintiff technically remained an employee through October 4, 2024, but did not perform any job tasks as of September 3, 2024.

93. Plaintiff was terminated from Defendant.

94. Following Plaintiff's termination, Barber replaced Plaintiff in her role at Defendant, taking over the rest of Plaintiff's job tasks.

95. On the same day, Defendant terminated Williams.

96. Another Caucasian employee took over William's position at Defendant.

97. No other employees were terminated at this time for job elimination or "redundancy."

11

98. Defendant discriminated against Plaintiff due to her race and disability and retaliated against her for reporting the aforementioned discrimination and requesting reasonable accommodations in violation of Title VII, the ADA, the PHRA and the PFPO.

99. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

100. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

101. Plaintiff is a member of protected classes in that she is African American.

102. Plaintiff was qualified to perform the job for which she was hired.

103. Plaintiff suffered adverse job actions, including, but not limited to termination.

104. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

105. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

106. Defendant discriminated against Plaintiff on the basis of her protected class.

107. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

108. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

109. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISCRIMINATION BASED ON RACE
## PENNSYLVANIA HUMAN RELATIONS ACT

110. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

111. The foregoing conduct by Defendant constitutes unlawful discrimination against

Plaintiff on the basis of her protected class (African American).

112. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set

forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT III – DISCRIMINATION BASED ON RACE
## PHILADELPHIA FAIR PRACTICES ORDINANCE

113. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

114. The foregoing conduct by Defendant constitutes unlawful discrimination against

Plaintiff on the basis of her protected class (African American).

115. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set

forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

116. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

117. Plaintiff is a "qualified individual with a disability" as that term is defined under the

ADA because Plaintiff has, or had at all times relevant hereto, a disability that

substantially limits or limited one or more major life activities or because Plaintiff had a

record of such an impairment or because Plaintiff was regarded as and/or perceived by

13

Defendant and its agents as being disabled.

118. Plaintiff was qualified to perform the job.

119. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

120. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

121. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

122. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

123. The purported reason for Defendant's decision is pretextual.

124. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

125. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

126. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISABILITY DISCRIMINATION**
**<u>PENNSYLVANIA HUMAN RELATIONS ACT</u>**

127. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

128. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that

14

substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

129. Plaintiff was qualified to perform the job.

130. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

131. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

132. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

133. Plaintiff's disability motivated Defendant's decision to constructively discharge Plaintiff.

134. The purported reason for Defendant's decision is pretextual.

135. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

136. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISABILITY DISCRIMINATION**
**<u>PHILADELPHIA FAIR PRACTICES ORDINANCE</u>**

137. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

138. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, a disability that

15

substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

139. Plaintiff was qualified to perform the job.

140. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

141. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

142. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

143. Plaintiff's disability motivated Defendant's decision to constructively discharge Plaintiff.

144. The purported reason for Defendant's decision is pretextual.

145. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

146. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

147. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

148. Plaintiff engaged in activity protected by Title VII.

16

149. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

150. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VIII – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

151. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

152. Plaintiff engaged in activity protected by the ADA.

153. Plaintiff complained of disability discrimination and requested reasonable accommodations due to her disability to Defendant.

154. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

155. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IX – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

156. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

157. Plaintiff engaged in activity protected by the PHRA.

17

158. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

159. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT X – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

160. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

161. Plaintiff engaged in activity protected by the PFPO.

162. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

163. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Marille Heallis, requests that the Court grant her the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

18

(e)    Reasonable attorneys' fees;

(f)    Recoverable costs;

(g)    Pre and post judgment interest;

(h)    An allowance to compensate for negative tax consequences;

(i)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII, the ADA, the PHRA and the PFPO.

(j)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

19

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: May 13, 2026                    **By:**  */s/David M. Koller*
                                            David M. Koller, Esquire
                                            Jordan D. Santo, Esquire
                                            2043 Locust Street, Suite 1B
                                            Philadelphia, PA 19103
                                            215-545-8917
                                            davidk@kollerlawfirm.com
                                            jordans@kollerlawfirm.com

                                            *Counsel for Plaintiff*